UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFF GILBERT,<br><br>  Plaintiff,<br><br>vs.<br><br>OFFICER PAUL BALDWIN, OFFICER JAMERY RAY, and INYO COUNTY SHERIFF'S DEPARTMENT,<br><br>  Defendants. | No. 1:05-CV-1627-OWW-NEW (TAG)<br><br>ORDER GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS PAUL BALDWIN, JAMERY RAY, AND THE COUNTY OF INYO/INYO COUNTY SHERIFF'S DEPARTMENT |

  The motion of defendants PAUL BALDWIN, JAMERY RAY, and the COUNTY OF INYO/INYO COUNTY SHERIFF'S DEPARTMENT, for summary judgment, came on regularly for hearing before this Court at 10:00 a.m., on October 29, 2007, in Courtroom 3, the Honorable Oliver W. Wanger, United States District Judge, Presiding. John D. Kirby, Esq., of the Law Offices of John D. Kirby, A Professional Corporation, appeared as attorney for all defendants. Plaintiff Jeff Gilbert, in pro se, did not appear.

  After considering all of the moving papers and the case file in this matter, after hearing the positions of moving-party defendants, and after considering all other matters before the Court, the Court issued its Memorandum Decision herein on October 29, 2007.

(PROPOSED) ORDER GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS PAUL BALDWIN, JAMERY RAY, AND THE COUNTY OF INYO/INYO COUNTY SHERIFF'S DEPARTMENT

PDF created with pdfFactory trial version www.pdffactory.com

NOW THEREFORE, in accordance with the foregoing, the Court finds as follows:

1. On January 26, 2004, defendant Deputy Sheriff Paul Baldwin of the Inyo County Sheriff's Department was working the night shift patrol (8:00 p.m. to 4:00 a.m.) in the Northern Division of Inyo County. At approximately 9:30 p.m., he received a call from Inyo County Sheriff's Dispatch advising that a call had been received from a female reporting party, from the Aspendell area of Inyo County, and the female reporting party advised that when she had arrived home that night, after having been gone for the weekend, she observed, from outside her home, and while looking through a front window, a strange man inside her home watching television.

2. Inyo County Sheriff's Department Corporal Jamery Ray, who was working as a K-9 unit in the same Northern Area, followed Deputy Baldwin to Aspendell and assisted in the response to this call.

3. Deputy Baldwin and Corporal Ray arrived in the Aspendell area at approximately 9:50 p.m. It was dark outside.

4. Deputy Baldwin contacted the reporting party, Ms. Camille Suetos, who was at a neighbor's house. Deputy Baldwin was told by Ms. Suetos that she and her neighbor placed a telephone call to her home, and that a man whom she did not know answered. The man told her that someone named "John Anderson" had told him he could stay there. Ms. Suetos advised Deputy Baldwin that she told the man in her home that he was in the wrong house, that it was her house, that he was trespassing, and that he had to leave.

5. Ms. Suetos gave Deputy Baldwin a key to her residence, and permission to enter.

6. Deputy Baldwin and Corporal Ray decided to drive to the Suetos residence, park a house or two away, walk up to the house, ring the doorbell, announce that the Sheriff's

2

(PROPOSED) ORDER GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS PAUL BALDWIN, JAMERY RAY, AND THE COUNTY OF INYO/INYO COUNTY SHERIFF'S DEPARTMENT

PDF created with pdfFactory trial version www.pdffactory.com

Department was present, and then, if the person did not answer or reveal his presence, they would open the door, make a canine announcement, and hopefully, the man would come out.[1]

7. They approached the residence. There were no lights on inside or outside the house. Deputy Baldwin rang the door bell, but did not hear a ring. He then opened the screen door, and knocked several times, very loudly. He also announced, several times, very loudly: SHERIFF'S DEPARTMENT; PLEASE OPEN THE DOOR … SHERIFF'S DEPARTMENT; OPEN THE DOOR. There was no response.

8. Deputy Baldwin, using the key that Ms. Suetos had given him, unlocked the dead bolt in the door, and opened the door. It swung inward, from his right to his left as he was looking at the door. He did not enter the house at that time, but rather announced very loudly: "Sheriff's Department; if you're inside, please come out now." He announced this two or three times. The house remained dark; and there was no response.

9. At that point, Deputy Baldwin stepped to the side, and Corporal Ray took over, giving the K-9 announcement and warning. Corporal Ray made the announcement two or three times. After the second or third K-9 announcement, a male subject from inside the residence call out: "I'm in here."

10. Corporal Ray backed the dog away. Deputy Baldwin told the man inside the house: "Sir, I want you to come over here, and I want to see your hands; put your hands in the air; walk over to the door." The man responded: "No." There then appeared to be no need to send the dog in to search for and hurt someone, so Deputy Baldwin announced that he was coming in. He was dressed in his Sheriff's Department patrol officer uniform. Before entering the residence, he announced, two or three times, loudly, that it was: "Sheriff's Department; I'm coming in."

---

[1] The K-9 announcement is, in substance, where the K-9 officer announces that a K-9 is present, and that if anyone is in the house and does not reveal his presence, the dog will be released, and will "find you and hurt you."

3

(PROPOSED) ORDER GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS PAUL BALDWIN, JAMERY RAY, AND THE COUNTY OF INYO/INYO COUNTY SHERIFF'S DEPARTMENT

PDF created with pdfFactory trial version www.pdffactory.com

11.     Deputy Baldwin drew his duty weapon, a .40 caliber semi-automatic pistol, held it in one hand, and illuminated the interior of the residence with his flashlight. He walked through the threshold of the doorway, and past the door which was opened and on his left. As he got through the doorway threshold, and past the open door which had swung open and was on his left, he immediately turned to his left. He saw a male subject (later identified as Jeff Gilbert, the plaintiff in this case) lying on a bed approximately 15 feet away. Gilbert was lying on his back, propped up against the wall like one situates himself or herself when watching TV in bed, with two pillows behind his head and with his legs extended, his feet generally pointed toward Deputy Baldwin. The man was looking at Baldwin, and he had a bundle of blankets or covers over his chest area. His hands were under the blanket, and Deputy Baldwin could not see them. The man was fully dressed wearing a shirt, pants, and shoes. Corporal Ray was behind Deputy Baldwin, in the threshold of the doorway.

12.     Deputy Baldwin focused on the man in the bed. Because he could not see the man's hands, and told him: "I want to see your hands; let me see your hands now!" Deputy Baldwin said this several times, very loudly. Baldwin was shining his flashlight in the man's face, and had his service weapon pointed at him. The man ultimately responded, in a clear, calm, voice: "No."

13.     Deputy Baldwin again commanded, very loudly: "I want to see your hands; I want to see your hands now!" The male subject said in response – "No, I have a gun."

14.     Deputy Baldwin continued to issue the command to let him see the man's hands, at which point the man started to move or pivot to his left, as if to step off the bed, and his right hand came up from underneath the blanket. Deputy Baldwin saw that the man was holding a silver or nickel-plated pistol. As the man turned off the bed, the pistol came up from under the covers, and the man held it straight out, as he was extending his arm toward Deputy Baldwin, and bringing the gun to point it directly at Baldwin.

15.     As the man began this movement, and as soon as Deputy Baldwin saw the gun starting to come up from under the covers, and beginning to be pointed at him, he commanded:

4

(PROPOSED) ORDER GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS PAUL
BALDWIN, JAMERY RAY, AND THE COUNTY OF INYO/INYO COUNTY SHERIFF'S DEPARTMENT

PDF created with pdfFactory trial version www.pdffactory.com

"Drop the gun! Drop the gun! Drop the gun!" As the gun became pointed directly at Deputy Baldwin, he feared for my life, and the life of Corporal Ray, who was now standing somewhere to his left, with the door blocking his (Ray's) view of the subject. Deputy Baldwin fired his duty weapon at the subject, successive rounds, in controlled but rapid succession. Deputy Baldwin aimed at the man's center of mass, as he had been trained to do. Deputy Baldwin fired until he saw that the male subject was going to the floor. It appeared to Deputy Baldwin that the man was no longer in possession of the gun, and was otherwise no longer an immediate threat to his life. At that time, Deputy Baldwin stopped firing. Deputy Baldwin fired a total of three rounds; his weapon was loaded with 15 rounds.

16. As Deputy Baldwin stopped firing, the male subject slid off the bed, landed on his knees on the floor, and then fell forward or rolled to the floor. Corporal Ray covered Baldwin as he (Baldwin) holstered his weapon, went to the male subject (plaintiff Gilbert), and located his gun underneath him, after Baldwin rolled Gilbert over onto his back, and put a pillow under his head. Corporal Ray then started administering first aid.

17. At no time did Deputy Baldwin use any more force, or fire any more rounds, than was necessary to prevent the subject, Gilbert, from firing his weapon at him. Under the circumstances of this encounter with Gilbert, in the dark room, illuminated only by flashlight, it was necessary for Deputy Baldwin to fire his weapon at Mr. Gilbert in order to prevent Mr. Gilbert from shooting Deputy Baldwin, and Corporal Ray, as well. As soon as the threat of death or serious bodily injury to Deputy Baldwin and/or Corporal Ray terminated, Deputy Baldwin immediately stopped firing and stopped all other use of force against Mr. Gilbert.

18. Deputy Baldwin then immediately called for an ambulance and proper medical attention for Mr. Gilbert, and attempted to keep Mr. Gilbert calm and comfortable while awaiting medical personnel. During that time, Baldwin asked Gilbert "Why did you point the gun at me?" Mr. Gilbert responded: "That was stupid."

19. While waiting for the ambulance, and trying to keep Mr. Gilbert calm, Deputy Baldwin also asked Mr. Gilbert if this was his (Gilbert's) house? And Gilbert said, No – it

PDF created with pdfFactory trial version www.pdffactory.com

wasn't his house. Baldwin then asked what he was doing there, if it wasn't his house? And Gilbert said "I'm looking for home; I'm lost; confused." Then he (Gilbert) began to ramble on about Jesus and some other religious things.

20. As Deputy Baldwin was beginning to enter the residence, Corporal Ray was just behind him, and restraining his K-9, Britt, who had become excited. After Corporal Ray heard Deputy Baldwin issue several commands to Let me see your hands! Sheriff's Department! Let me see your hands! – and after Corporal Ray heard the subject refuse to show his hands, Corporal Ray heard the subject announce that he had a gun, and thereafter, heard Deputy Baldwin command loudly: "Drop the gun! Drop the gun! Drop the gun!" Deputy Baldwin's "Drop the gun!" commands were followed by Deputy Baldwin firing his service weapon three times in rapid succession.

21. Both Deputy Baldwin and Corporal Ray were in Deputy Sheriff Uniform, and were on uniformed patrol on that night.

22. As soon as Corporal Ray cleared the doorway and could see into the room, after the shots were fired, he observed the male subject, Mr. Gilbert, on the edge of the bed, sitting somewhat sideways, with his head down, and in a position that would have allowed a kind of summersault off the bed. Mr. Gilbert then slid off the bed onto the floor. The subject began yelling: "I'm shot!"

23. Deputy Baldwin subsequently asked Mr. Gilbert: "Why didn't you put the gun down?" To this Mr. Gilbert responded: "I don't know. I'm stupid. I didn't want to get into trouble."

24. When Deputy Baldwin was moving Mr. Gilbert away from the bed, Corporal Ray saw a silver and black semi-automatic pistol lying on the floor, under the area where Mr. Gilbert's stomach had been against the floor.

25. The Inyo County Sheriff's Department's Use of Force Policy is set forth at Section 307.00 of the Sheriff's Department manual, and is entitled: "Use of Force." A true and correct copy of the Department's Use of Force Policy is attached as Exhibit A to the Declaration of

PDF created with pdfFactory trial version www.pdffactory.com

Lieutenant Stephan J. Rogers, dated 9/23/07, submitted in this matter.  Section 307.01 provides in pertinent part:

    A.    While the following guidelines generally apply, officers are permitted to use any force which is reasonable to protect themselves and others from bodily harm while accomplishing a lawful police purpose.

    B.    Force shall be used at an officer's discretion:

        1.    When necessary to defend themselves or others;

        2.    To effect arrests;

        3.    To prevent the commission of a public offense.

    C.    Officers must maintain control of all 14 enforcement situations at all times.  Suspects should not be allowed to gain the advantage in a physical confrontation.

    D.    The use of physical force shall be restricted:

        1.    To circumstances authorized by policy or law;

        2.    To the level necessary to accomplish a law enforcement task.

    E.    Deadly force may only be used:

        1.    As a means of self defense, to defend the life of another Peace Officer, or to defend the life of a victim, witness, or the public from an immediate threat of death or violent injury;

        2.    To prevent a crime in which human life is in immediate threat of death or violent injury as a result of the suspect's action;

    F.    Use of Force Continuum:

        1.    Levels of force are used as needed, there is not a 'ladder' of force that must be followed.  The officer shall choose the available force option, which is reasonable and necessary to effectively establish control of the situation.

(PROPOSED) ORDER GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS PAUL BALDWIN, JAMERY RAY, AND THE COUNTY OF INYO/INYO COUNTY SHERIFF'S DEPARTMENT

PDF created with pdfFactory trial version www.pdffactory.com

26. All Inyo County Sheriff's Deputies are trained to the "Use of Force" Policy. It is the policy required of all Sheriff's Deputies when performing their duties.

27. There is no unwritten accepted practice, no unwritten accepted custom, and no unwritten policy, of a standard for the implementation or use of force by Inyo County Sheriff's Department Deputies other than the Department's formal and written "Use of Force" policy.

28. The Inyo County Sheriff's Department's Use of Force Policy complies with the standards and requirements of the California Commission on Peace Officer Standards and Training.

29. Both Deputy Baldwin and Corporal Ray had been trained in the California P.O.S.T. compliant Use of Force policy of the Inyo County Sheriff's Department, prior to the events occurring January 26, 2004, involving Mr. Gilbert.

30. On February 9, 2004, Inyo County Sheriff's Department Lieutenant Rogers chaired a Shooting Review Board, which reviewed and evaluated the decisions and actions of Deputy Baldwin and Corporal Ray on the night of January 26, 2004, involving Gilbert. After reviewing the Sheriff's Department policy on the Use of Force, the actions of Deputy Baldwin and Corporal Ray, and the actions of Gilbert, it was concluded by the Shooting Review Board that the shooting was within Department policy and consistent with current training standards for use of force by peace officers in California.

31. The use of force by Deputy Baldwin on the night of January 26, 2004, in firing his weapon at a suspect who refused to show his concealed hands, after being repeatedly ordered by a uniformed Deputy Sheriff to do so, and who then presented a previously concealed pistol in his hand, and then refused to drop the pistol upon after being ordered to do so by the Deputy, and who actually extended his arm and the pistol toward the Deputy, pointing the pistol directly at him, constituted a justifiable use of deadly force by Deputy Baldwin to protect himself and others from death or serious bodily injury, and was not an excessive use of force.

8

(PROPOSED) ORDER GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS PAUL BALDWIN, JAMERY RAY, AND THE COUNTY OF INYO/INYO COUNTY SHERIFF'S DEPARTMENT

PDF created with pdfFactory trial version www.pdffactory.com

32. The use of deadly force by Deputy Baldwin was reasonable based upon his perception, observation, and fear for his safety and that of Cpl. Ray. Deputy Baldwin's use of deadly force comports with both state and national standards and training.

33. Deputy Baldwin followed appropriate state law, department policies, and training as it relates to the use of deadly force.

34. Deputy Baldwin fired three rounds, and he stopped firing, during the heat and stress of that combat situation, when he perceived that the deadly threat was terminated. Deputy Baldwin had an additional 12 rounds in his duty weapon that were available to him, but which he did not fire, because of his perception that the need to do so had ended. This is consistent and in compliance with Inyo County Sheriff's Department training and policy, and with the California Commission on Peace Officer Standards and Training use of force policy in California.

35. Under similar circumstances, most if not all reasonable peace officers would have acted just as did Deputy Baldwin in firing his weapon repeatedly at a burglary suspect who was pointing a handgun at him.

36. Deputy Baldwin's use of force to stop the threat of death or serious bodily injury that he was facing did not call for Corporal Ray to intercede or attempt to stop Deputy Baldwin from protecting himself against the deadly threat being presented by Gilbert.

37. Under similar circumstances, most if not all reasonable peace officers would have acted just as did Corporal Ray, in not interceding and attempting to stop Deputy Baldwin from protecting himself.

38. The response, tactics, and communication displayed by the Deputies, initially, during, and at the conclusion of the incident, were reasonable based on officers' perception and the totality of the circumstances.

39. It was reasonable for the Deputies to approach Mr. Gilbert, who was located inside the residence, based on their perception, training, and experience as it relates to burglary suspects and the risk to public safety.

9

(PROPOSED) ORDER GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS PAUL
BALDWIN, JAMERY RAY, AND THE COUNTY OF INYO/INYO COUNTY SHERIFF'S DEPARTMENT

PDF created with pdfFactory trial version www.pdffactory.com

40. The use of deadly force by Deputy Baldwin was reasonable based upon his perception, observation, and fear for his safety and that of Cpl. Ray. Deputy Baldwin's use of deadly force comports with both state and national standards and training. Deputy Baldwin followed appropriate state law, department policies, and training as it relates to the use of deadly force.

41. Corporal Ray followed appropriate state law, department policies, and training as it relates to a deadly force encounter and declining to intercede to stop Deputy Baldwin from protecting himself.

42. Nothing in this incident supports a finding or a claimed existence of any custom, policy, or practice that encourages or condones the use of excessive force by members of the Inyo County Sheriff's Department.

43. Nothing in this incident supports a propensity for violence on the part of Deputy Baldwin or Corporal Ray that contributed to the decision to use deadly force against Gilbert.

44. As a result of the following, Mr. Gilbert posed an immediate and deadly threat to the Deputies because of his actions:

    a. According to police reports and statements, Gilbert refused to comply with or surrender to both Deputy Baldwin's and Cpl. Ray's simple and uncomplicated commands.

    b. Instead, Gilbert verbally refused to come out, which forced the Deputies to enter the residence.

    c. Additionally, when confronted inside the residence, Gilbert refused to show his hands, which were concealed under a blanket.

    d. When Gilbert removed his hands from the blanket, he had a handgun in his right hand, and proceeded to extend his arm and point the weapon directly at Deputy Baldwin in a life-threatening manner.

    e. Gilbert refused to drop the handgun when ordered to do so by Deputy Baldwin.

PDF created with pdfFactory trial version www.pdffactory.com

   f. It was obvious that Gilbert posed an immediate and deadly threat to the Deputies because of his actions.

   g. The decision not to release the canine into the residence, after a person ultimately called out from inside, was reasonable for several reasons, including without limit that it was unknown whether the person who called out was ill, injured, handicapped, simply intoxicated, or otherwise incapacitated.

 45. It is reasonable to assess and assume that Gilbert posed an imminent threat to both the Deputies and the community based on Gilbert's unauthorized entry into someone else's residence and the fact he was armed with a handgun.

 46. This incident had a significant degree of uncertainty and was obviously tense and rapidly changing.  In a matter of seconds, the seriousness of the crime escalated from burglary, up to and including brandishing a firearm, and assault on a police officer with a handgun.

 47. There is clear evidence that Gilbert posed a significant threat to the Deputies, which culminated in Gilbert displaying and pointing his handgun at Deputy Baldwin in a life-threatening manner.  At the same time, there is no evidence that supports the Deputies engaged in excessive force.

 48. The response and action of both Deputy Baldwin and Corporal Ray was appropriate and reasonable given the information and circumstances.  It was obvious that Gilbert posed an immediate and deadly threat to the Deputies because of his actions.

 49. The use of deadly force against Gilbert by Deputy Baldwin comports with the training, policies, and practices commonly recognized by the law enforcement community.

 50. Such circumstances, if repeated, would predictably cause trained law enforcement personnel to respond and act in the same manner, regardless of jurisdiction or agency.

 51. The handgun that Gilbert admits to pointing at Deputy Baldwin is a .380 caliber Bersa Thunder semi-automatic pistol. It was recovered at the scene of the shooting on the night of the shooting.

(PROPOSED) ORDER GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS PAUL BALDWIN, JAMERY RAY, AND THE COUNTY OF INYO/INYO COUNTY SHERIFF'S DEPARTMENT

PDF created with pdfFactory trial version www.pdffactory.com

52. A photograph taken of Gilbert's gun in the condition in which it was recovered, shows that the hammer was back and the safety in the off position. There was a live round in the chamber, along with a fully loaded 7-round magazine. The weapon was fully ready to fire, merely by applying light pressure to the trigger.

53. Gilbert was convicted by plea of Assault on a Police Officer with a Deadly Weapon, namely, a firearm, in violation of California Penal Code Section 245(d)(2), as a result of the events of January 26, 2004. Gilbert was sentenced to eight years in State Prison as a result of that conviction.

54. On the night of January 26, 2004, Mr. Gilbert made the conscious and deliberate decision to use his pistol to provoke the Inyo County Deputy Sheriffs into fearing for their life, and into therefore shooting and killing him (Mr. Gilbert), as a form of suicide.

55. Mr. Gilbert had been having suicidal thoughts for several months prior to January 26, 2004, and on more than 50 occasions contemplated killing himself, including putting his pistol in his mouth, and otherwise up to his head.

56. Gilbert did not actually pull the trigger and shoot himself was because he was afraid that the single self-inflicted gunshot would he could fire might not be enough to actually kill him, and he did not want to live in some kind of "vegetable" state, in the event her survived the single shot he could fire himself.

Based on all of the pleadings and files in this matter, and based upon the foregoing findings. and the Court's Memorandum of Decision herein, IT IS HEREBY ORDERED that the motion for summary judgment by each of defendants PAUL BALDWIN, JAMERY RAY, and the COUNTY OF INYO/INYO COUNTY SHERIFF'S DEPARTMENT, is GRANTED.

Dated: ____November 17, 2007____

_/s/ OLIVER W. WANGER
OLIVER W. WANGER
United States District Judge

12

(PROPOSED) ORDER GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS PAUL BALDWIN, JAMERY RAY, AND THE COUNTY OF INYO/INYO COUNTY SHERIFF'S DEPARTMENT

PDF created with pdfFactory trial version www.pdffactory.com